**Rhoda Y. BARTON and Lewis Johnstone, on behalf of themselves and all others similarly situated, Appellants,**

**v.**

**Eli EICHELBERGER, Mayor, City of York, Pennsylvania, et al.**

**No. 18986.**

United States Court of Appeals, Third Circuit.

Argued March 19, 1971.

Decided Nov. 1, 1971.

---

Biggs, Circuit Judge, dissented and filed opinion.

Peter Hearn, Pepper, Hamilton & Scheetz, Philadelphia, Pa. (Edith G. Laver, Philadelphia, Pa., on the brief), for appellants.

David W. Bupp, City Sol., York, Pa. (Jay V. Yost, York, Pa., on the brief), for appellees.

Fred Speaker, Atty. Gen., Dept. of Justice, Harrisburg, Pa., on brief, for Commonwealth of Pennsylvania, amicus curiae.

Jack Greenberg, James M. Nabrit, III, Michael Meltsner, Melvyn Zarr, New York City, Anthony G. Amsterdam, Stanford, Cal., on brief for amici curiae N.A.A.C.P. Legal Defense and Educational Fund, Inc. and The National Office for the Rights of the Indigent.

Before BIGGS and KALODNER, Circuit Judges, and WHIPPLE,* District Judge.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

This appeal is from the District Court's dismissal of the plaintiffs' class action seeking declaratory and injunctive relief, under the Civil Rights Act,[1] against the Mayor and Director of Public Safety of the City of York, Pennsylvania, and the named York police officials. Plaintiffs, York residents, allege in their Amended Complaint, that the defendants had violated their rights (1) by conducting illegal searches and seizures in contravention of the Fourth and Fourteenth Amendments; (2) by illegal police practices, including use of excessive force and imposition of summary punishment contravening the Due Process Clause; and (3) by denying black residents of York their right to the equal protection of the laws secured by the Fourteenth Amendment.

The District Court premised its denial of injunctive relief and dismissal of the plaintiffs' action on its factual determination that evidence adduced at seven days of hearings [2] established that turbulent race riots erupted in York from July 17 to July 28, 1969 during which the Mayor of York imposed a curfew and the Governor of Pennsylvania declared a state of emergency; Pennsylvania National

---

* Sitting by special designation.

1. 42 U.S.C.A. § 1983.

2. Hearings were held by the District Court August 6, 7, 8, 14; September 17; October 8 and 9, 1969. After 1346 pages of testimony were transcribed, oral arguments were heard by the District Court on December 19, 1969 and its Opinion was filed March 31, 1970.

Guardsmen and State Police occupied the city; York officials "made every effort to comply with constitutional requirements under most strenuous conditions" and there was no "official policy authorizing unconstitutional searches"; the York police force did not follow a pattern of racism or illegal police actions, nor was such a pattern "officially espoused or tolerated"; it made a total of 108 arrests during the 12 days of rioting, and of those arrested 59 were black and 49 were white; one of plaintiffs' counsel in fact referred to York's Police Chief Leonard Landis as "a fair man"; and "only a few of the 94 members of the Police Department" were guilty of "illegal and improper" police action and expression of racism.

In its "Discussion of Facts,"[3] the District Court graphically described "the wave of horror and panic that gripped the City of York" during the 12 days of race riots; the "general gunfire" of armed "roving gangs"; the "scattered attempts of firebombings"; and the subjecting of police vehicles "to heavy fire while patrolling the troubled areas," as indicia of "the enormity of the problems with which law enforcement officials were confronted." 311 F.Supp. 1142–1143.

The record establishes that 25 persons were shot during the rioting; two fatally—a black woman and a white policeman. Extensive property damage was wrought, including police vehicles. The District Court, in its fact-findings, discussed some 120 instances of violence participated in by both black and white citizens, and in a few instances by policemen.

The District Court also considered testimony with respect to several searches of homes for weapons, on July 23 and 24, 1969, conducted by York police, Pennsylvania State Police and National Guardsmen. Only one search was warrantless. The District Court found that all of the searches were valid.

Plaintiffs, on this appeal, contend that the District Court erred in ruling the searches valid because in their view: (1) the affidavits in support of the search warrants did not afford a sufficient basis for the issuance of the warrants; (2) the searches were conducted in an unreasonable manner; and (3) the warrantless search was unjustified under the prevailing circumstances. The plaintiffs further urge that the District Court erred in these respects: (1) it imposed "a heavier burden of proof than that generally applicable to civil actions in equity"; (2) in denying injunctive relief with respect to the five incidents in which it found action by several policemen was "reprehensible" and "inexcusable"; (3) in finding that there was not a "pattern" of police misconduct.

We find no merit in the plaintiffs' contentions with respect to the searches, for the reasons so well-stated by the District Court in its exhaustive discussion as to their validity in its Opinion, 311 F.Supp. at pages 1150–1155.

We also find without merit the plaintiffs' contention that the District Court imposed a heavier burden of proof than that generally applicable to civil actions in equity. The District Court's extensive discussion and analysis of the testimony presented by the plaintiffs effectively negates this contention.

Further, we do not subscribe to the plaintiffs' contention that the District Court erroneously denied them the injunctive relief which they sought.

The hard core of that contention is that (1) the District Court was "clearly erroneous" in its factual determination that the record failed to establish that there was a pattern of racism or illegal police action during the July 1969 race riots in York, or that such a pattern was "officially espoused or tolerated," and (2) the District Court erred in denying plaintiffs' injunctive relief in the light of its factual finding that sev-

3. The District Court's Opinion, containing 129 Findings of Fact, Discussion, and Conclusions of Law, is reported at 311 F.Supp. 1132 (M.D.Pa.1970).

eral of York's policemen had been guilty of improper police action and racism.

With respect to the "clearly erroneous" aspect of the plaintiffs' contention as to the District Court's stated fact-findings, we are of the opinion that it is utterly without merit, and that the record in fact amply sustains the challenged fact-findings.

As to the second aspect of the plaintiffs' contention, viz., that the District Court erred in denying them injunctive relief in view of its fact-findings with respect to the condemned conduct of several policemen, this must be said:

The thrust of that contention is that the District Court abused its legal discretion in its denial of injunctive relief, albeit the plaintiffs have failed to specifically so state.

█ It is well-settled that a District Court's denial of injunctive relief will not be reversed unless such denial constitutes an abuse of legal discretion.

█ In light of the totality of the circumstances prevailing in the instant case, we cannot say that the District Court abused its discretion in denying the injunctive relief sought by the plaintiffs.

On the score of that denial we note that the District Court in its Opinion[4] directed attention to these facts:

Plaintiffs, in their Complaint, filed July 24, 1969, named as defendants, John L. Snyder as Mayor of York, and Jacob W. Hose, as Director of Public Safety of York. Mayor Snyder died October 8, 1969 and on January 15, 1970, Eli Eichelberger, the newly elected Mayor of York, was substituted for him as defendant, and Leslie Jackson, York's present Director of Public Safety, was then substituted for Jacob W. Hose.

In considering the plaintiffs' contention that the "clear possibility" of future illegal police action required injunctive relief, the District Court could, of course, have given consideration to the changes in York's municipal administration in January, 1970, as significantly bearing on that contention.

It may be noted that plaintiffs, on this appeal, agree that they had the burden below of showing a clear possibility that unlawful police activities will recur in the future in their application for injunctive relief.

On review of the record we cannot say that the District Court abused its discretion in failing to find a clear possibility of recurrence of unlawful police action.

For all the reasons stated, the Judgment of the District Court, filed March 31, 1970, dismissing the plaintiffs' Complaint, will be affirmed.

BIGGS, Circuit Judge (dissenting).

An examination of the record convinces me that the York police repeatedly violated the rights of members of the black community. Whether the police did so by deliberate design is open to doubt but that a pattern of unlawfulness was demonstrated by them to York Negroes cannot be doubted by me.

The defendants attempted to demonstrate that because of changes in personnel of the ruling authorities of York the attitude of the police toward York blacks was altered so substantially as to render the case moot and injunctive relief unnecessary. I cannot deem the changes effected to be that significant: nor could the Attorney General of Pennsylvania in office during the actual period of the criticized police activity, as appears from the "Brief of the Commonwealth of Pennsylvania" filed by him herein as *amicus curiae*: nor could the Pennsylvania Human Relations Commission which suggested vital changes in police procedures as set out in its "Investigatory Hearing Report" (attached to the brief of the Attorney General): nor could the "Brief for Amici Curiae, N.A.A.C.P. Legal Defense and Educational Fund, Inc., and the National Office for the Rights of the Indigent."

4. 311 F.Supp. 1134.

While it is true that the successor Attorney General of Pennsylvania, successor by reason of a general election and a change in the Commonwealth's governing political party, "withdrew" his predecessor's brief, I in the light of all the circumstances cannot view this fact to be of great import.

I would reverse the judgment of the District Court and grant injunctive relief.

For the reasons stated, I must respectfully dissent.